**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC.** and **RAINBOW DIRECT MARKETING, LLC,**<br><br>          Plaintiffs,<br>v.<br><br>**KEVIN V. OLSEN, in his official capacity as Director of the Utah Division of Consumer Protection, Department of Commerce for the State of Utah,**<br><br>          Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:08-cv-00875DAK |

This matter comes before the court on Defendant Kevin V. Olsen's ("Defendant") Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Concurrently, Defendant moved to strike an affidavit and several declarations.  The court held a hearing on the motions on November 10, 2009. At the hearing, American Charities for Reasonable Fundraising Regulation, Inc. ("American Charities") and Rainbow Direct Marketing ("Rainbow Direct") (collectively "Plaintiffs") were represented by Charles H. Nave and Defendant was represented by Jeffrey Buckner. The court took the matter under advisement.  Having heard arguments, fully considered the motions and memoranda submitted by the parties and the facts and law relevant to the motion, the court

DENIES Defendant's Motion to Dismiss, finds the Motion to Strike is MOOT, and enters the following Order.

## BACKGROUND

This case challenges the constitutionality of the Utah Charitable Solicitations Act, Utah Code Ann. §§ 13-22-1 through -23 (the "Act"), which requires certain charitable organizations and the professional fundraising consultants ("PFCs") that assist them to register with the Utah Division of Consumer Protection ("the Division"). Rainbow Direct is a PFC organized under the laws of the state of New York. Plaintiff American Charities is an out-of-state corporation that represents PFCs and others with respect to fundraising regulations. Defendant is the Director of the Division in the Department of Commerce for the State of Utah.

Many charitable organizations solicit contributions through nationwide campaigns. Because these nationwide solicitation campaigns can be complicated and unwieldy, charities will often engage outside professionals to assist them. Some PFCs consult with and assist the charity, which continues to conduct the solicitation itself, often through direct mail campaigns. Many states have enacted laws to regulate the solicitation of charitable contributions and the activities of charities, solicitors, and PFCs. The challenged Act is one such law.

The Act includes requirements that both charities and the PFCs that have contracted to advise them register with the Division before solicitation activity can commence in Utah. *See* Utah Code Ann. §§ 13-22-5(1), 13-22-5(4), 13-22-9(1). Plaintiff Rainbow Direct falls within the Act's definition of a PFC.

Rainbow Direct is also a member of American Charities. American Charities' primary purpose is acting on behalf of its members with regard to the regulation of charitable fundraising. It is a nonprofit organization whose members consist of other nonprofit umbrella organizations as well as PFCs and charities. Although Rainbow Direct is a member of American Charities, and is thus represented by American Charities in this action, Rainbow Direct is also appearing as a plaintiff to represent its own interests.

Amy Tripi ("Tripi") is President of Rainbow Direct. On April 2, 2008, Tripi spoke via telephone with Marcia Corak of the Division regarding Rainbow Direct's contract with its client charity, Straight Women in Support of Homos, Inc. ("SWiSH"). Tripi noted that SWiSH had registered with the Division to solicit charitable contributions in Utah and asked if it was the Division's position that Rainbow Direct must register because of its status as a PFC advising SWiSH. Corak responded that the Division would require Rainbow Direct to register as a PFC. Tripi indicated that Rainbow Direct's attorney had advised it that Rainbow Direct was not required to register in Utah because it has no clients in Utah, no office locations in Utah, does not solicit business in Utah, does not solicit charitable contributions in Utah, and has no other contacts with Utah. Corak did not find this reasoning persuasive and reiterated that the Division would require Rainbow Direct to register. Tripi asked what would happen if Rainbow Direct failed to register, and Corak responded that the Division would or could (the exact wording seems to be disputed) take administrative action against Rainbow Direct when SWiSH renewed its registration.

As a result of this conversation with the Division, Rainbow Direct alleges it has been forced to refrain from providing fundraising consulting services to SWiSH. Also, SWiSH has

been prevented from moving forward with its solicitation campaign because of the Division's actions toward Rainbow Direct.

Seven months after the telephone call, Plaintiffs filed suit pursuant to 42 U.S.C. § 1983. Plaintiffs challenge the constitutionality of the Act. Specifically, they allege the registration provision of the Act: (1) violates the dormant Commerce Clause due to a lack of nexus between Plaintiffs and the state of Utah; (2) violates the dormant Commerce Clause due to placing an undue burden on interstate commerce; (3) violates the First Amendment on its face due to overbreadth; (4) violates the First Amendment as applied to PFCs; (5) violates the First Amendment as applied to the client charities of the PFCs; and (6) violates due process by exercising the power of the state over entities that have no contacts with the state. Finally, Plaintiffs seek injunctive relief from the court to preclude enforcement of the Act.

## ANALYSIS

### I. DEFENDANT'S MOTION TO DISMISS

Defendant moves to dismiss on two grounds. First, Defendant argues that the court does not have subject matter jurisdiction because: (1) no justiciable case or controversy exists; and (2) Plaintiffs lack standing. Second, Defendant argues that Plaintiffs have failed to state a claim on which relief may be granted because Plaintiffs' claims: (1) are barred by accord and satisfaction; (2) are speculative; (3) are internally inconsistent and have failed to identify all plaintiffs; and (4) are defective for a miscellany of other reasons.[1] Additionally,

---

[1] Defendant does not argue the merits of the constitutionality question but notes that the Tenth Circuit has already ruled that the registration provision of the Act challenged by Plaintiffs is constitutional. *See American Target Advertising, Inc. v. Giani*, 199 F.3d 1241 (10th Cir. 2000). Defendant also points out that regulation of charitable solicitation has repeatedly been held constitutional by the United States Supreme Court. *See e.g., Secretary*

Defendant has moved to strike an affidavit and a variety of declarations submitted by Plaintiff on the grounds that the allegations contained therein are conclusory, legal argument, hearsay, and not based on personal knowledge.

### A. Subject Matter Jurisdiction

#### 1. Case or Controversy

To demonstrate the existence of a controversy, Plaintiffs must show "that [they] personally have suffered some actual or threatened injury as a result of putatively illegal conduct." *Valley Forge Christian Coll. v. Americans for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citation omitted). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, (1923); *see Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974); *Pierce v. Society of Sisters*, 268 U.S. 510, 526 (1925).

Defendant contends that American Charities has not alleged any direct injury. It also argues that Rainbow Direct has suffered no injury because the threatened enforcement action was hypothetical and speculative. The alleged injury was dependent on SWiSH renewing its permit in Utah and that was not certain to occur. Defendant goes on to assert that because no enforcement action or prosecution was ever conducted against Rainbow Direct no *actual*

---

*of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947 (1984); *Riley v. Nat'l Fed'n of the Blind of North Carolina*, 487 U.S. 781 (1988); *Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620 (1979).

injury was sustained. Citing numerous Supreme Court cases, Defendant repeatedly contends that a claim that rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," is not ripe. *See e.g., Texas v. United States*, 523 U.S. 296, 300 (1998).

Further, in the Complaint, Rainbow Direct alleges that it is not currently engaged in any activity that would bring it within the purview of the Act. A factually similar case, brought by American Charities and its member organization, the Bill of Rights Foundation, was dismissed for lack of standing. *See American Charities for Reasonable Fundraising Regulation, Inc. v. Shiffrin*, 46 F. Supp. 2d 143, 151 (D. Conn. 1999). In its effort to distance itself from creating a nexus with Utah, Rainbow Direct "has remained in an inactive position of safety in which it has done nothing that the state can prosecute." *Id.* As a result, Defendant claims that Rainbow Direct "can show no threatened or actual threat of illegal prosecution." *Id.* Defendant concentrates on the potential enforcement of the Act as being the crux of the harm and limits its analysis of the injury required to establish a case or controversy to that issue.

Citing to *Babbitt v. United Farm Workers Nat'l Union*, Plaintiffs counter that they have sustained sufficient injury. 442 U.S. 289, 298 (1979). They assert that the realistic likelihood of future injury as the result of enforcement of the Act is a credible threat and is not speculative and uncertain as described by Defendant. Plaintiffs further contend that they do not have to wait until prosecution or enforcement takes place before injury is present. The concepts of *Babbitt* have had recent expression in the Tenth Circuit in the context of First Amendment considerations. The court found a justiciable case when:

> (1) evidence that in the past [plaintiffs] have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) *a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.*

*Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (emphasis added).

Defendant responds that Plaintiffs' reliance on *Babbitt* is misplaced. The inevitability of the plaintiff's violation of the criminal statute in question in *Babbitt* makes the harm certain in that case, and Defendant claims there is no element of inevitability at play here. *Babbitt*, 442 U.S. at 302. While there is no absolute guarantee that Rainbow Direct would violate the Act here, Plaintiffs are only required to show a "credible threat," not a cast iron certainty, in order to demonstrate injury.

In addition to the threat of future harm, Plaintiffs allege actual past harm in the form of lost income that Rainbow Direct would otherwise have earned but for Defendant's threats. They assert that being unable to counsel SWiSH constitutes direct actual injury. The PFC registration requirement, backed up by the threat of administrative action to enforce it, has deprived Rainbow Direct of the benefits of a business relationship. Further, SWiSH has been harmed by having its constitutionally protected right to solicit charitable contributions in Utah impeded because it uses a PFC that is not registered.

Plaintiffs distinguish the facts of this case from those in *American Target Advertising, Inc. v. Giani* (*"American Target"*) wherein the registration provision of the Act, complained of by Plaintiffs, was found constitutional. 199 F.3d 1241 (10th Cir. 2000). Plaintiffs contend the distinction is that Rainbow Direct does not have the required contacts with Utah to bring

7

it within the jurisdiction of the Act. Rather they claim that the facts of this case more closely resemble *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 221 F.3d 1211 (11th Cir. 2000). In that case, a county ordinance similar to the Act was deemed unconstitutional because the PFCs it regulated did not have the requisite nexus with the county. *Id.* at 1218. Here, Plaintiffs allege no contacts with Utah and no purposeful direction of charities to solicit funds from Utah citizens. Thus, Plaintiffs argue that no nexus exists.

To the extent that the parties dispute whether Rainbow Direct actually has contacts with the state of Utah or is likely to in the future, it is a dispute that must be resolved in favor of Plaintiffs at this early stage of the litigation. What appears clear is that the Division will enforce the Act against any PFC that operates in or assists a charity that solicits contributions in Utah. Rainbow Direct wishes to assist SWiSH, and SWiSH has registered in Utah.  In addition to the above, Plaintiffs allege that PFCs, such as New River Direct, register with the Division as a preventative measure, regardless of their intention to establish any contacts with Utah. They claim injury as a result of that de facto requirement to register with the Division in order to assist a charity with a national fundraising campaign that may never touch Utah.

The court concludes that Plaintiffs have articulated sufficient injury to justify the case or controversy requirements under the standards laid out by the Supreme Court. First, Rainbow Direct has demonstrated a realistic danger of sustaining a direct injury as a result of the Act's operation or enforcement. Second, Rainbow Direct need not wait to be prosecuted for engaging in constitutionally protected activity in the face of statutory prohibition. In

addition to the threat of enforcement, Rainbow Direct has had to curtail the services it provides to a charity registered in Utah. Rainbow Direct is injured by being limited in its ability to provide services to charities that solicit in Utah and the specific loss of income in its business relationship with SWiSH. Further, PFCs who do not register with the Division are dissuaded from assisting charities with contacts in Utah or that wish to solicit in Utah. The court, therefore, concludes that there is no basis for dismissing this action for lack of subject matter jurisdiction.

### 2. Standing

Defendant acknowledges that Rainbow Direct has standing, but argues that American Charities lacks standing because it has no "personal stake in the outcome" of this matter. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Absent individual standing, Defendant asserts that American Charities cannot "raise the rights of others who are not before the court." *National Counsel for Improved Health v. Shalala*, 122 F.3d 878, 882 (10th Cir. 1997). Defendant concedes, however, that if American Charities meets the requirements of *Hunt v. Washington State Apple Adver. Comm'n*, it could possibly have associational standing. 432 U.S. 333 (1977).[2]

"An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432

---

[2] Defendant disputes the validity of American Charities' standing as an assignee of a claim from another PFC, New River Direct, Inc. Defendant also contends that *jus tertii* standing does not apply. As the court needs to analyze only associational standing, the parties' arguments on only that issue will be enumerated.

U.S. at 343; *see also Utah Ass'n of Counties v. Bush*, 455 F.3d 1094 (10th Cir. 2006). American Charities claims it has associational standing using the *Hunt* test and points to allegations in the Complaint to support each element of the test.

Defendant, as an initial matter, argues that associational standing does not apply except to vindicate a right to privacy, *see Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228 (10th Cir. 2001), or a right of association, *Shiffrin*, 46 F. Supp. 2d at 152 because section 1983 rights are personal. But, the Tenth Circuit has not adopted the Second Circuit's limitations on associational standing in 1983 cases to cases involving the rights of privacy and association. In *Roe No. 2*, a section 1983 right to privacy case, the court upheld associational standing. 253 F.3d 1225, 1228 (10th Cir. 2001). As much as Defendant would like to be able to limit that holding to privacy cases, nothing in the opinion does so. A sister court in this Circuit found little in the way of limitations on associational standing in section 1983 cases when discussing the issue in *Gonzalez v. Albuquerque Public Schools*, 2006 WL 1305032, at *3–*4 (D.N.M. Jan. 17, 2006) (distinguishing cases from the Tenth Circuit involving individual standing in 1983 claims and citing cases from other circuits involving equal protection claims where associational standing was found.)

The court concludes American Charities has associational standing under Tenth Circuit precedent and the *Hunt* test. First, American Charities' members would otherwise have standing to sue in their own right. In its Complaint, American Charities alleges that it "represents its members . . . who are national direct mail fundraising organizations who have been subject to Utah's state regulatory requirements." Third Am. Compl. ¶ 20. American Charities claims to represent PFCs with no contacts to Utah other than the fact that one or

more of their clients may or may not solicit charitable contributions in Utah, yet each of which is injured by either: (a) having to register with the Division to avoid administrative sanction; or (b) foregoing or limiting a business relationship with such clients. Moreover, it is undisputed that Rainbow Direct, one of American Charities' members, has standing in this action. Other similarly situated PFCs that are members of American Charities would also have standing in their own right.

Under the second prong of the *Hunt* test, Defendant argues that American Charities does not meet the standards required of a representative organization, i.e., it does not represent a "discrete, stable group of persons with a definable set of common interests." *American Legal Found. v. F.C.C.*, 808 F.2d 84, 90 (D.C. Cir. 2002). Defendant argues that Plaintiffs' members have no definable set of common interests because, in large part, its membership is too diverse and its structure too amorphous. American Charities, however, is seeking to protect interests that are central to their existence as a representative organization and are at least part of the reason that its members became members of the organization. One of American Charities' primary purposes is "acting on behalf of its members with regard to charitable regulation." Third Am. Compl. at ¶ 17. The perhaps ill-defined or amorphous nature of the membership, complained of by Defendant, does not overcome the fact that the membership has at least one discrete and common purpose — advocating for reasonable fundraising regulation — and American Charities represents that interest.

Third, there is no evidence that the individual members of American Charities are required to be parties to this suit. This is demonstrated by the previously successful litigation in *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*. 221

F.3d 1211 (11th Cir. 2000). The court, therefore, concludes the American Charities has associational standing in this case.

Because American Charities has associational standing and Defendant has not argued that Rainbow Direct lacks standing, the court does not need to reach the issues of American Charities' potential *jus tertii* standing, nor the validity of conferring standing to American Charities by the assignment of New River Direct's claim.

### B. Failure to State a Claim

Defendant further argues that Plaintiffs have failed to state a claim because: (1) their claims on behalf of certain PFCs are barred by accord and satisfaction pursuant to settlement agreements with the state; (2) their the claims are speculative; (3) the Complaint contains inconsistent allegations and unidentified plaintiffs; and (4) the Complaint contains a variety of other defects.

### 1. Accord and Satisfaction

Several of the PFCs represented by American Charities including New River Direct, whose claim is assigned to American Charities, are registered with the Division. In the past, those entities have been the subject of administrative actions by the Division. As part of those enforcement actions, they entered into settlement agreements with the State. Defendant now argues that the terms of those settlement agreements bar suits by these entities or on their behalf.

Plaintiffs counter that this argument is unavailing because the settlement agreements were not entered into voluntarily by the PFCs. According to Plaintiffs, the settlement agreements were the result of the threat of litigation by the Division and the PFCs had

suffered injury prior to entering the settlements. Plaintiffs further contend that the prevalence of these settlement agreements is evidence of an aggressive enforcement policy by the Division. American Charities also alleges that it represents other PFCs not subject to such settlement agreements.

Without reaching the question of the validity of the settlement agreements, the court concludes that, while some of American Charities members may not barred by accord and satisfaction, the association as a whole and Rainbow Direct specifically are not barred from asserting their claims.

### 2. Speculative Claims

Defendant asserts that Plaintiffs' claims that the PFCs assist with fundraising campaigns that "may include solicitations in Utah" by using mailing lists that "may contain names of persons residing in Utah" are speculative and cannot be controverted. Third Am. Compl. ¶¶ 22, 34.

The universe of possibilities encompassed by the allegations complained of is limited; only two options exist. Either the solicitations include Utah or they do not. Though not completely definitive, the allegations are sufficient to provide notice to Defendant of the claims against him. In light of the previous discussion regarding the speculative nature of the claims in the case or controversy context, and the binary nature of the alternatives described by the allegations, the court concludes that Plaintiffs' Complaint provides sufficient notice to Defendant of the claims against him. More specific information may be obtained through the discovery process.

### 3. Inconsistent Allegations/Unidentified Plaintiffs

Defendant argues that because Plaintiffs include American Charities' member PFCs in their definition of "Plaintiffs" in the body of the Complaint and not in the caption, it does not have sufficient notice in the pleadings of which parties it is defending against.

In response, Plaintiffs re-assert the doctrine of associational standing. They contend that their PFC members do not have to be named parties in this case and their rights are being asserted by American Charities. Despite the inconsistent use of the word "Plaintiffs," complained of by the Defendant, the court concludes that there is sufficient clarity in the Complaint so that Defendant knows that he is defending against Rainbow Direct, in an individual capacity and American Charities, in a representative capacity, on behalf of its members.

### 4. Other Pleading Defects

Defendant further asserts that the Complaint fails to meet Rule 12(b) (6) because it is populated by statements from a variety of declarants whose declarations are inadmissible as conclusory and hearsay allegations. Defendant also takes issue with the citation to legal authority, use of argument, and the use of generalized grievances in the Complaint. It argues that none of the above is a well-pleaded fact and absent consideration of those facts Plaintiffs have failed to state a claim upon which relief may be granted.

Plaintiffs respond, without conceding that any of Defendant's allegations are true, that, even if they were true, none of the alleged pleading deficiencies rise to the level of meeting the movant's burden to prove that no legally cognizable claim for relief exists. They argue that allegations to support each of the elements for each of the claims have been

included in the Complaint.

The court concludes the Complaint is sufficient. Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While the Complaint does contain some conclusory or otherwise flawed allegations, the court concludes there is sufficient factual support for the claims. Even absent consideration of the allegedly flawed affidavit and declarations, it is possible that Plaintiffs can prove some set of facts that would allow the court to award relief. Plaintiffs do not merely allege violation of their constitutional rights but provide specifics of the threatened enforcement action, the effect of the registration provision in curtailing current and future business opportunities, and attempt to differentiate this case from *American Target* by alleging a lack of contacts with Utah to support their dormant Commerce Clause and Due Process Clause claims. Further, in light of the *Pinellas County* decision, Plaintiffs have alleged more than a mere suspicion of liability and injury in the Complaint.

Accordingly, considering the liberal pleading standards set out in the Federal Rules of Civil Procedure, while also being cognizant of the Supreme Court decisions in *Twombly* and *Iqbal*, the court concludes that sufficient factual support exists to "nudge [the claims] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Finally, because the court's findings are based solely on a reading of the Complaint, Defendant's Motion to Strike

is moot.

## CONCLUSION

Based on the above reasons, Defendant's Motion to Dismiss is DENIED and

Defendant's Motion to Strike is MOOT.

DATED this 18th day of December, 2009.

BY THE COURT:

_____
DALE A. KIMBALL,
United Sates District Judge