IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC. and RAINBOW DIRECT MARKETING, LLC,<br><br>                Plaintiffs,<br>v.<br><br>KEVIN V. OLSEN, in his official capacity as Director of the Utah Division of Consumer Protection, Department of Commerce for the State of Utah,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08-cv-00875DAK |

        This matter comes before the court on Defendant Kevin V. Olsen's ("Defendant")

Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure. Concurrently, Defendant moved for a Motion to Stay Discovery pending the

consideration of the motion to dismiss. The motion to stay, therefore, is moot. The court

held a hearing on Defendant's Motion to Dismiss on June 16, 2010. At the hearing, American

Charities for Reasonable Fundraising Regulation, Inc. ("American Charities") and Rainbow

Direct Marketing ("Rainbow Direct") (collectively "Plaintiffs") were represented by Charles

H. Nave and Geoffrey Peters, and Defendant was represented by Jeffrey Buckner. The court

took the matter under advisement. Having heard arguments, fully considered the motions

and memoranda submitted by the parties and the facts and law relevant to the motion, the

court enters the following Memorandum Decision and Order.

## BACKGROUND

The factual background is taken from the Third Amended Complaint given that the matter is before the case on a motion to dismiss. The factual background for this case was previously recited by the court in its December 18, 2010 Memorandum Decision and Order on Defendant's previous Motion to Dismiss.

This case challenges the constitutionality of the Utah Charitable Solicitations Act, Utah Code Ann. §§ 13-22-1 through -23 (the "Act"), which requires certain charitable organizations and the professional fundraising consultants (PFCs) that assist them to register with the Utah Division of Consumer Protection. Plaintiff Rainbow Direct Marketing, LLC ("Rainbow Direct") is a PFC organized under the laws of the state of New York. Plaintiff American Charities for Reasonable Fundraising Regulation, Inc. ("American Charities") is an out-of-state corporation that represents PFCs with respect to fundraising regulations. Defendant Kevin J. Olsen is the Director of the Utah Division of Consumer Protection in the Department of Commerce for the State of Utah.

Many charitable organizations solicit contributions through nationwide campaigns. Because these nationwide solicitation campaigns can be complicated and unwieldy, charities will often engage outside professionals to assist them. Some third-party professionals – "professional fundraising consultants" (PFCs) – consult with and assist the charity, which continues to conduct the solicitation itself, often through direct mail campaigns.

Many states have enacted laws to regulate the solicitation of charitable contributions and the activities of charities, solicitors, and PFCs. Utah's Charitable Solicitation Act (the

"Act") is one such law. Utah Code Ann. § 13-22-1 *et seq*. The Act includes requirements that both the charities and the PFCs that have contracted to advise them register with the Division of Consumer Protection of the Department of Commerce for the State of Utah (the "Division") before solicitation activity can commence in Utah. *See id.* §§ 13-22-5(1), 13-22-5(4), 13-22-9(1).

Plaintiffs allege that Rainbow Direct falls within the Act's definition of a PFC. Defendant, however, asserts that it is a disputed issue. Rainbow Direct is a member of American Charities. American Charities's primary purpose is acting on behalf of its members with regard to the regulation of charitable fundraising. It is a nonprofit organization whose members consist of other nonprofit umbrella organizations as well as PFCs and charities. Although Rainbow Direct is a member of American Charities, and is thus represented by American Charities in this action, Rainbow Direct is also appearing as a plaintiff to represent its own interests.

Amy Tripi ("Tripi") is President of Rainbow Direct. On April 2, 2008, Tripi spoke via telephone with Marcia Corak of the Division regarding Rainbow Direct's contract with its client charity, Straight Women in Support of Homos, Inc. ("SWiSH"). Tripi noted that SWiSH had registered with the Division to solicit charitable contributions and asked if it was the Division's position that Rainbow Direct must register because of its status as a PFC advising SWiSH. Corak responded that the Division would require Rainbow Direct to register as a PFC. Tripi indicated that Rainbow Direct's attorney had advised it that Rainbow Direct was not required to register in Utah because it has no clients in Utah, no office locations in Utah, does not solicit business in Utah, does not solicit charitable contributions

in Utah, and has no other contacts with Utah whatsoever. Corak did not find this reasoning persuasive and reiterated that the Division would require Rainbow Direct to register. Tripi asked what would happen if Rainbow Direct failed to register, and Corak responded that the Division would or could (the exact wording is disputed) take administrative action against Rainbow Direct when SWiSH renewed its registration.

As a result of this conversation with the Division, Rainbow Direct alleges it has been forced to refrain from providing fundraising consulting services to SWiSH. Also, SWiSH has been prevented from moving forward with its solicitation campaign because of the Division's actions toward Rainbow Direct.

Seven months after the telephone call, Plaintiffs filed suit pursuant to 42 U.S.C. § 1983. Plaintiffs challenge the constitutionality of the Act. Specifically, they allege the registration provision of the Act: (1) violates the dormant Commerce Clause due to a lack of nexus between Plaintiffs and the state of Utah; (2) violates the dormant Commerce Clause due to placing an undue burden on interstate commerce; (3) violates the First Amendment on its face due to overbreadth; (4) violates the First Amendment as applied to PFCs; (5) violates the First Amendment as applied to the client charities of the PFCs; and (6) violates due process by exercising the power of the state over entities that have no contacts with the state. Finally, Plaintiffs seek injunctive relief from the court enjoining enforcement of the Act.

## DISCUSSION

### Defendant's Motion to Dismiss

Defendant moves to dismiss Plaintiffs' Third Amended Complaint on the following grounds: (1) no case or controversy exists; (2) lack of ripeness; (3) Eleventh Amendment

immunity; (4) improper notice under Rule 5.1 of the Federal Rules of Civil Procedure; and (5) several types of abstention.

### *1. Case or Controversy*

First, Defendant argues that this court lacks subject matter jurisdiction over Plaintiffs' Complaint because their claims does not meet the "case or controversy" requirement under Article III. The case or controversy requirement under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) contains three elements. First, Plaintiffs must demonstrate an "injury in fact" that is concrete, particularized, and "actual and imminent." *Id.* at 560. Second, there must be a causal connection between the injury and the conduct complained of that is "fairly traceable" to the Defendant. *Id.* Third, it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Id.*

Defendant argues that Plaintiffs have alleged a threat and an injury, but they have not alleged a causal connection between the either the threat or injury and Defendant. Plaintiffs' Complaint alleges that Defendant is the Division's director and that an employee of the Division threatened RDM. Defendant contends that because Plaintiffs do not attribute the threat or injury specifically to Defendant, but another employee or the Division as a whole, they have not adequately linked Defendant and the alleged conduct. Defendant asserts that the threat, whether it was made by the other employee or the Division, was made by persons not before this court.

The alleged threat and injuries, however, are fairly traceable to Defendant acting in his official capacity because he is charged with enforcing the PFC registration requirement and his agent warned RDM that it would face administrative action if it failed to register.

The Director is charged with the enforcement policy that the employees of the Division follow. The employee appears to have been merely following what she believed to be Division policy. The court finds nothing improper about suing the Director of the Division rather than the individual employee who made the comments. The court therefore concludes that the allegations in the Third Amended Complaint meet the case or controversy requirements.

### 2. *Standing*

Defendant next argues that the case should be dismissed for lack of standing because Plaintiffs have not alleged an injury fairly traceable to Defendant. Standing for equitable claims must appear on the face of the complaint. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). While general factual allegations might establish standing in some instances, general allegations of possible or potential injury do not. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Injury-in-fact is also more than a generalized grievance. *Warth v. Sedlin*, 422 U.S. 490, 499 (1975). Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case.

Again, the court concludes that Plaintiffs have pled allegations against Defendant in his official capacity as Director of the Division. These allegations, even though they involve the conduct of a Division employee rather than Defendant himself, are fairly traceable to Defendant because he is charged with enforcement of the regulations under the statute. Defendant has more control over the policy of the Division than an individual employee in the Division and he is in a better position to afford relief if Plaintiffs are successful in their claims. Accordingly, the court concludes that Plaintiffs have standing to assert their claims.

### *3. Ripeness*

Defendant also argues that the case should be dismissed on grounds of ripeness because the issues raised in Plaintiffs' Complaint are not sufficiently real or final for this court to consider them. Ripeness requires an evaluation of both the fitness of the issues for decision as well as the hardship to the parties by withholding court consideration. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). The basic rationale behind the doctrine of ripeness is to prevent courts from entangling themselves in abstract disagreements. *Id.* at 148. Whether an issue is "fit for judicial resolution" is determined by "both the legal nature of the question presented and the finality of the administrative action." *Powder River Res. Council v. Babbitt*, 54 F.3d 1477, 1483-84 (10th Cir. 1995).

Defendant argues that whether RDM meets the statutory definition of a PFC is a legal question that is dependent on facts. The Division issues citations on reasonable cause, Utah Code Ann. § 13-2-6(3), and Defendant contends that neither he nor the Division has determined whether RDM is subject to the Act or whether it has sufficient contacts with Utah. Defendant asserts that he could not make that determination without running afoul of other Constitutional constraints. Accordingly, Defendant argues that unless and until the Division employees make their determinations and take action, the question presented here is not sufficiently real or final to be considered fit for judicial resolution.

The court stated in its prior order that to the extent that the parties dispute whether RDM actually has contacts with the State of Utah or is likely to in the future is a dispute that must be resolved in favor of Plaintiffs at this stage of the litigation. It is clear that RDM wishes to assist SWiSH and SWiSH has registered in Utah. In addition, Plaintiffs have

7

alleged that PFCs are registering with the Division as a preventative measure even though they do not believe it is constitutionally required. These are real consequences to Plaintiffs and provide a sufficiently tailored dispute for this court to address. Although Defendant argues that what RDM may or may not do is an abstraction that precludes ripeness, the court also already found that Plaintiffs' Complaint provides sufficient notice to Defendant of the claims against him.

Defendant further argues that Plaintiffs suffer no hardship by withholding a determination now because there is no allegation that Defendant has acted or is likely to act to harm Plaintiffs interests or cut off their rights. In addition, Defendant would not be the one to take action against Plaintiffs and, if the Division did, there are administrative and state procedures that provide them due process to defend that action. Defendant claims, however, that he is harmed by defending a lawsuit that has no allegations against him.

Again, despite Defendant's arguments that Plaintiffs would suffer no hardships in waiting, the court has ruled that RDM is suffering ongoing injury because it has had to curtail the services it provides to a charity registered in Utah and is injured by being limited in its ability to provide services to charities that solicit in Utah and the specific loss of income in its business relationship with SWiSH.

While Defendant argues that he is harmed in defending a lawsuit that has no allegations against him, he is named in his official capacity as Director of the Division. The court has also ruled that Plaintiffs have alleged more than a mere suspicion of liability and injury in the Complaint.

Accordingly, the court concludes that the dispute is sufficiently defined to meet the

ripeness requirements. The court, therefore, finds no basis for dismissal of the Complaint on ripeness grounds.

### *4. Eleventh Amendment Immunity*

Defendant argues that Plaintiff's Complaint should be dismissed on Eleventh Amendment immunity grounds because it does not fall within the *Ex Parte Young* exception. Eleventh Amendment immunity extends to state agencies and is generally viewed as a limitation on jurisdiction that should be resolved prior to the merits of an action. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (extends to state agencies); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 467 (1945) (limit on jurisdiction); *Joseph A. v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002) (Eleventh Amendment immunity should be resolved first).

There is, however, an exception to Eleventh Amendment immunity that allows a state officer to be sued for prospective injunctive or declaratory relief from an ongoing violation of the Constitution or federal laws. *MCI Telecomm Corp. v. Pub. Serv. Comm.*, 216 F.3d 929, 935 (10th Cir. 2000) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). To fall within the *Ex Parte Young* exception, the complaint must meet two conditions: (1) the state officer sued "must have some connection with the enforcement" of the allegedly unconstitutional act; and (2) the plaintiff must allege that a state official is acting in violation of federal law or threatening to enforce an invalid law. 209 U.S. at 155-57.

Defendant argues that even if Plaintiffs meet both conditions of *Ex Parte Young*, it does not automatically mean that the suit can proceed. *Elephant Butte Irr. Dist. V. Department of Interior*, 160 F.3d 602, 611 (10th Cir. 1998). When a suit is brought only against state officials, a question arises as to whether that suit is against the state official or

against the state itself. A suit against a state official may be one against the state in substance if the officer is only a nominal defendant. *Edelman*, 415 U.S. at 663. Whether the state is the real party in interest turns on the true nature of the complaint and the relief requested, not the formal designation of the parties in the complaint. *Powder River*, 54 F.3d at 1483.

To determine whether *Ex Parte Young* applies courts inquire into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Md Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002). The Tenth Circuit applies a four-part test to lawsuits against state officials. *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001). The court looks at whether (a) plaintiffs are suing state officials rather than the state itself; (b) plaintiffs have alleged a non-frivolous violation of federal law; (c) the relief sought is prospective equitable relief or is analogous to a retroactive award of damages; and (d) the suit does not implicate special sovereignty interests. *Id.*

First, the named defendant in this action is Kevin Olsen, a state official, who is alleged to be invested with authority to enforce Utah's Charitable Solicitations Act. Although there are references to the Division and plural defendants in the Complaint and several of Plaintiffs' declarations refer to suing the state instead of Olsen, Olsen is the only named defendant and he is in a position to provide relief if Plaintiff's claims are successful. The court does not find it helpful in this analysis to examine whether every word in Plaintiffs' Complaint and declarations is consistent with Defendant Olsen being the named defendant rather than the Division. The question is whether in substance Defendant is a proper defendant. In seeking an injunction, Defendant is the official within the Division who

could provide that relief. Plaintiffs also rebut Defendant's claim that he has no connection to the alleged injury. The standard in *Ex Parte Young* is whether the state officer, "by virtue of his office, has some connection with the enforcement of the act."

Next, under the factor requiring an alleged violation of federal law, the court "need only determine whether Plaintiffs state a non-frivolous, substantial claim for relief against the state officials that does not merely allege a violation of federal law solely for the purpose of obtaining jurisdiction." *Elephant Butte Irrigation Dist. v. Department of Interior*, 160 F.3d 602, 610 (10th Cir. 1998). This court previously ruled that Plaintiff's allegation of injury was sufficient and the injury was fairly traceable to Defendant.

Under the third prong, Plaintiffs stated at the hearing on this motion that they seek only prospective injunctive relief. While Defendant repeatedly argued that Plaintiffs seek retroactive monetary damages as well, Plaintiffs have stated on the record that they do not seek that type of remedy. Plaintiffs state that their prayer for relief asks only prospective remedies. They seek a declaration that certain provisions of the Act are unconstitutional, an injunction prohibiting their enforcement, an order requiring payment of attorneys' fees and expenses. The requested relief will do nothing to redress injuries already suffered by any entity. While Plaintiffs may have alleged past wrongs to demonstrate standing and frame the dispute, they agree that those allegations are irrelevant to their statement of the relief sought.

Finally, Defendant asserts that the regulation of charities and fundraising implicates special sovereignty interests of the State. Plaintiffs are not challenging interests such as state property rights or its power to tax. Rather, they are challenging Defendant's authority to regulate out-of-state PFCs who allege to have no contact in Utah. While significant

regulation is done at the state level, the issue presented in this case relates to interstate commerce.

The court, therefore, concludes that Plaintiffs meet the *Ex Parte Young* exception to Eleventh Amendment immunity. Accordingly, there are no grounds for dismissal of their action under such doctrine.

**5. Rule 5.1**

Defendant also argues Plaintiffs' Complaint should be dismissed because Plaintiffs failed to comply with Rule 5.1 of the Federal Rules of Civil Procedure. Rule 5.1 of requires the party filing a pleading that draws into question the constitutionality of a state statute to file a notice and serve it on the state attorney general. The court then certifies that the statute has been questioned and the attorney general is permitted to intervene. But Rule 5.1 also specifically states that it applies "if . . . a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity." The Defendant in this lawsuit is an officer of the State of Utah being sued in his official capacity. Therefore, Rule 5.1 does not apply.

6. **Abstention**

Finally, Defendant argues that four types of abstention may apply to this case: (1) *Pullman* abstention because Plaintiffs' complaint involves unsettled questions of state law; (2) *Burford* abstention because the case involves difficult questions of state law that bear on policy problems of substantial public importance whose import transcends the result in the federal case; (3) *Younger* abstention because the issue needs to be addressed in the Division first even though there is no state proceeding; and (4) *Colorado River* abstention because a

state court's determination of the issue may moot the federal constitutional question.

*Pullman* extension is inappropriate for at least two reasons. First, the question of whether Defendant can exercise jurisdiction over nonresidents, such as Plaintiffs, is a federal constitutional question, rather than a question of state law. Second, even if this was a question of state law, it appears that as far as the State of Utah is concerned, the issue is not unsettled. Similarly, *Burford* extension does not apply because there is no difficult question of state law and this case turns on federal constitutional law.

*Younger* abstention does not apply because there is no ongoing state proceeding, the state court does not offer an adequate forum because there is no proceeding in state court, and the case involves federal constitutional issues. Furthermore, *Colorado River* abstention does not apply because, as the court has already concluded above, there are no special state sovereignty interests at issue in the case.

The court concludes that Defendant's Motion to Dismiss does not present grounds for the dismissal of Plaintiffs' Complaint. Accordingly, Defendant's Motion to Dismiss is denied.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss is DENIED and Defendant's Motion to Stay Discovery is MOOT.

DATED this 15th day of July, 2010.

_____
DALE A. KIMBALL,
United Sates District Judge