IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC., and RAINBOW DIRECT MARKETING, LLC, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | |
| v. | Case No. 2:08-cv-875 |
| DANIEL O'BANNON, Director of the Utah Division of Consumer Protection, Department of Commerce for the State of Utah, | Judge Robert J. Shelby |
| Defendant. | |

This case is about the legislative jurisdiction of Utah's Charitable Solicitations Act. Plaintiffs American Charities for Reasonable Fundraising Regulation, Inc. and Rainbow Direct Marketing, LLC sued Defendant Daniel O'Bannon in his official capacity as the Director of the Utah Division of Consumer Protection. Plaintiffs seek declaratory and injunctive relief, alleging that the Act as applied to them violates their constitutional rights.

The parties now cross-move for summary judgment on whether Plaintiffs have Article III standing to litigate this case. Pursuant to Civil Rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to decide the motions on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. For the reasons stated below, the court grants in part and denies in part each Motion.

# BACKGROUND[1]

Utah regulates through the Charitable Solicitations Act the solicitation of charitable contributions in the State.[2]  The Act requires all professional fundraising consultants (PFCs) that contractually assist charitable organizations to register with and obtain a permit from the Utah Division of Consumer Protection before performing services for their clients.[3]  PFCs do not solicit contributions, but instead assist and consult with charities that conduct solicitations themselves.[4]

American Charities is a Delaware charitable and educational organization that represents nonprofits and PFCs concerning charitable and fundraising regulations.[5]  It acts on behalf of its members by "instituting legal actions as . . . deemed appropriate or necessary by the Board of Directors."[6]

American Charities appears here as a representative of PFCs who have been subject to the Act.  It seeks to represent its PFC members that "have no contact with Utah," and "have been injured by Defendant's policy of requiring PFCs to register even though these consultants have no contact with Utah and who do not target or direct their clients to solicit in Utah as opposed to nationally."[7]  American Charities also appears as the purported assignee of a claim originally belonging to New River Direct, Inc.  New River is a Florida Corporation that assists its nonprofit

---

[1] Even though the court is evaluating cross-motions for summary judgment, the court treats the cross-motions as if they are two distinct, independent motions.  *Cannon v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5563303, at *1 (D. Utah Oct. 7, 2013).  Accordingly, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party in each motion.  *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015).
[2] The court recites the facts here to provide context for the court's analysis of the parties' motions for summary judgment.  These facts, however, are not material to the court's analysis of the issues raised in the motions.  As a result, Defendant's objections to Plaintiffs' evidentiary submissions are moot.  *See* Dkt. 389–395.
[3] *See* Utah Code § 13-22-9.
[4] *See id.* § 13-22-2(12)(a).
[5] Certificate of Amendment to the Certificate of Incorporation (Dkt. 365, Ex. 1).
[6] *Id.*
[7] Dkt. 365 at 5.

clients with nationwide charitable solicitation campaigns.[8]  In 2005, New River entered into a settlement agreement with the Division after the Division determined that New River provided consulting services for a charitable client while it was not registered with the Division.[9]  Even though New River believed its constitutional rights were being infringed upon by the Division, New River entered into the settlement agreement to avoid defending against an administrative enforcement action.[10]  New River has registered with the Division every year since 2008 under protest.[11]  And because New River has no intention of initiating litigation to vindicate its rights, it executed a written agreement with American Charities purporting to assign its claim against the Division to American Charities.[12]

Rainbow Direct, an American Charities member since spring 2008,[13] appears here on its own behalf.  Rainbow Direct is a New York limited liability corporation formed to provide fundraising consulting services to charitable organizations that advocate for gays, lesbians, and bisexuals.[14]  In late 2007, Rainbow Direct entered into a fundraising consulting contract with Straight Women in Support of Homos, Inc. (SWiSH).[15]  After SWiSH began registering with states to solicit charitable contributions, SWiSH received a letter from the Division saying, "It is unlawful for any charitable organization to utilize the services of a . . . professional fund raising counsel or consultant that is not in compliance with the Charitable Solicitations Act.  According to our records, Rainbow Direct Marketing is not currently registered in the State of Utah."[16]

In spring 2008, Rainbow Direct's President, Amy Tripi, spoke on the telephone with a

---

[8] Decl. of Rod Taylor (Dkt. 365, Ex. 30), ¶ 4.
[9] New River Direct Settlement Agreement (Dkt. 365, Ex. 22).
[10] Decl. of Rod Taylor (Dkt. 365, Ex. 19), ¶¶ 2–3.
[11] Supplemented Responses to Defendant's Interrogatories on Standing (Dkt. 365, Ex. 35).
[12] *See* Assignment Agreement Between New River and American Charities (Dkt. 365, Ex. 8).
[13] *See* Decl. of Xenia Boone (Dkt. 365, Ex. 32), ¶ 2.
[14] Decl. of Amy Tripi (Dkt. 365, Ex. 10), ¶ 2.
[15] Affidavit of Amy Tripi (Dkt. 365, Ex. 9), ¶ 2.
[16] March 18, 2008 Letter from Utah Division of Consumer Protection to SWiSH (Dkt. 365, Ex. 7).

licensor for the Division.  Tripi asked the licensor whether the Division would require Rainbow Direct to register.[17]  The licensor responded that the Division would require Rainbow Direct to register and pay a fee.[18]  Tripi told the licensor that Rainbow Direct has no clients in Utah, has no office locations in Utah, does not solicit business or contributions in Utah, and has no other contacts with Utah.[19]  But the licensor maintained that Rainbow Direct must register with the Division.[20]  And the licensor stated that the Division would take administrative action against Rainbow Direct if it did not register by the time SWiSH renewed its registration.[21]  Rainbow Direct has since refrained from performing any services for SWiSH under their contract.

American Charities and Rainbow Direct initiated this lawsuit under 42 U.S.C. § 1983 in late 2008, asserting that the Act is facially unconstitutional under the Commerce Clause and the First Amendment.  They also allege that the Act is unconstitutional as applied to PFCs under the First Amendment and the Due Process Clause.

Defendant moved in 2009 to dismiss the claims asserted against him, arguing in part that American Charities has neither associational standing nor standing under the New River assignment.  Judge Dale A. Kimball, the judge to whom this case was assigned at the time, concluded that Plaintiffs sufficiently alleged that American Charities has associational standing to litigate the case.[22]  As a result, Judge Kimball declined to address whether Plaintiffs adequately alleged that American Charities also enjoys standing under the New River assignment.[23]

Defendant later moved in 2011 for summary judgment on Plaintiffs' claims.  At a hearing

---

[17] Affidavit of Amy Tripi (Dkt. 365, Ex. 9), ¶ 8.
[18] *Id.* ¶ 9.
[19] *Id.* ¶ 10.
[20] *Id.* ¶ 11.
[21] *Id.* ¶ 12.
[22] Dkt. 59.
[23] *Id.*

held in early 2012, Judge Clark Waddoups, the judge to whom this case was assigned at the time, granted summary judgment in Defendant's favor on each of Plaintiffs' facial challenges to the Act.[24] Judge Waddoups also concluded that Plaintiffs' as-applied challenges to the Act could go forward, but he declined to rule on them then because the record was insufficiently developed.[25] Finally, Judge Waddoups concluded that Rainbow Direct has standing to assert the as-applied challenges to the Act based on the threat of agency action.[26] Judge Waddoups did not rule on American Charities' asserted associational standing.[27]

After engaging in additional discovery and motion practice, the parties filed the current cross-motions for summary judgment on whether Plaintiffs have standing to litigate this case.

## LEGAL STANDARD

The court grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[29]

## ANALYSIS

The court's analysis proceeds in three parts. The court first addresses whether Rainbow Direct has standing to litigate this case. Second, the court examines whether American Charities has associational standing to litigate on behalf of its members. And finally, the court discusses whether American Charities has standing as an assignee of New River's claim. In the end, the

---

[24] February 2, 2012 Hearing Tr. (Dkt. 158), at 5–6; *see also* Dkt. 151, ¶ 1 ("The court grants summary judgment in favor of Defendant on each of Plaintiffs' facial challenges.").
[25] Dkt. 151, ¶ 3.
[26] February 2, 2012 Hearing Tr. (Dkt. 158), at 56:7–11; *see also* Dkt. 151, ¶ 2 ("The court finds that the threat of agency action against Rainbow Direct Marketing, LLC ('Rainbow Direct') is sufficient to afford Rainbow Direct standing to challenge the Charitable Solicitations Act.").
[27] *See* February 2, 2012 Hearing Tr. (Dkt. 158), at 57:2–5 (stating that "I think it has been acknowledged that American Charities has only associational standing on behalf of its members and no separate standing").
[28] Fed. R. Civ. P. 56(a).
[29] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

court concludes that Rainbow Direct has standing, but that American Charities does not.

**I.    Rainbow Direct's Standing**

  The "case" or "controversy" requirement of Article III of the United States Constitution requires a plaintiff seeking judicial relief to establish three elements: "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision."[30]  The injury-in-fact requirement "ensure[s] that the plaintiff has a personal stake in the outcome of the controversy."[31]  A plaintiff seeking injunctive relief must show that the injury is "concrete and particularized," and that any threat is "actual and imminent, not conjectural or hypothetical."[32]  The plaintiff must show that standing existed at the time it filed suit.[33]

  Here, Judge Waddoups concluded in 2012, when evaluating Defendant's earlier motion for summary judgment, that Rainbow Direct has standing to litigate its as-applied challenges to the Act.[34]  The court declines to revisit this legal ruling under the law-of-the-case doctrine.[35]  The doctrine "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[36]  The doctrine is subject to three narrow exceptions: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a

---

[30] *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551 (1996).

[31] *Susan B. Anthony v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation omitted) (internal quotation marks omitted).

[32] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

[33] *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016).

[34] Dkt. 151, ¶ 2.

[35] *See Stewart v. Kempthorne*, 554 F.3d 1245, 1254 (10th Cir. 2009) (recognizing that standing is a legal question the court of appeals reviews de novo).

[36] *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (citation omitted) (internal quotation marks omitted).

manifest injustice."[37]   None of the exceptions apply here: the evidence currently before the court

is not substantially different than the evidence that was before Judge Waddoups when he ruled;

controlling authority has not changed; and Judge Waddoups's ruling was not clearly erroneous.

Rainbow Direct has standing to pursue its as-applied challenges to the Act.

## II.   American Charities' Associational Standing

The court now turns to whether American Charities has associational standing to litigate

the as-applied challenges to the Act on behalf of its PFC members.  While a "plaintiff generally

must assert his own legal rights and interests,"[38] it is well settled "that even in the absence of

injury to itself, an association may have standing solely as the representative of its members."[39]

American Charities must satisfy three elements to have associational standing: "(a) its

members [must] otherwise have standing to sue in their own right; (b) the interests it seeks to

protect [must be] germane to the organization's purpose; and (c) neither the claim asserted nor

the relief requested requires the participation of individual members in the lawsuit."[40]  "This test

takes into account both the constitutional dimension of standing and also the concern that the

association properly represent its members in the particular suit."[41]

Here, American Charities lacks associational standing because it cannot satisfy the test's

third requirement.  Plaintiffs argue that individual participation is usually unnecessary where, as

here, "the association seeks a declaration, injunction, or some other form of prospective relief."[42]

But "the relief sought is only half of the story."[43]  And an association has standing on behalf of

---

[37] *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143 (10th Cir. 2006) (citation omitted) (internal quotation marks omitted).

[38] *Kan. Health Care v. Kan. Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018, 1021 (10th Cir. 1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[39] *Int'l Union, UAW v. Brock*, 477 U.S. 274, 281 (1986) (citation omitted) (internal quotation marks omitted).

[40] *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

[41] *Kan. Health Care*, 958 F.2d at 1021.

[42] *Warth*, 422 U.S. at 515.

[43] *Rent Stabilization Ass'n of New York v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993).

its members only if the *claims* asserted do not require the participation of individual members.[44] This means the court must examine whether Plaintiffs' as-applied constitutional challenges to the Act "will require individualized participation by the members" of American Charities.[45]  In undertaking this analysis, the court expresses no opinion on the merits of Plaintiffs' claims.

Plaintiffs contend in part that Defendant applies the Act to confer legislative jurisdiction in a manner inconsistent with due process.  In circumscribing the limits on a state's legislative jurisdiction, "the Supreme Court has employed language reminiscent of that used in the personal jurisdiction caselaw."[46]  The Court has stated that "[t]here must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction."[47]  In the personal jurisdiction context, a party has "minimum contacts" with the jurisdiction if its conduct "create[s] a substantial connection with the forum State."[48]  Courts often ask whether the party "'purposefully directed' its activities at the forum state," or whether it "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state."[49]

Because "[t]his analysis is fact specific,"[50] and because Plaintiffs here assert as-applied challenges to the Act, the court must review evidence concerning each affected PFC members' contacts with Utah.  For example, the court must examine the specific actions each member has taken in its consulting work, and then determine whether those actions are sufficient to bring the

---

[44] *Hunt*, 432 U.S. at 343.
[45] *Kan. Health Care*, 958 F.2d at 1022.
[46] *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1255 (10th Cir. 2000).
[47] *Id.* (quoting *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 315 n.2 (1970) (Harlan, J., dissenting)); *accord Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000); *Adventure Commc'ns Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 436 (4th Cir. 1999).
[48] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).
[49] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).
[50] *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (citation omitted) (internal quotation marks omitted).

member within the legislative jurisdiction of the Act.[51]  The court cannot determine whether the Act as applied violates those PFC members' due process rights "without delving into individual circumstances."[52]  Plaintiffs' claim that American Charities' members have insufficient contacts with Utah for Defendant to exercise legislative jurisdiction over them "will necessarily require individual participation of [American Charities'] members."[53]

To be sure, the individual participation element of the associational standing test articulated above arises out of prudential considerations, not Article III's case or controversy requirement.[54]  And it "is best seen as focusing on . . . matters of administrative convenience and efficiency."[55]  But in view of the fact-specific nature of the as-applied claims here asserted, the court concludes that administrative convenience and efficiency are best served by requiring each affected PFC member to participate in this suit so the court can adequately assess the individual contacts of each with the State.

American Charities lacks associational standing to assert its PFC members' as-applied challenges to the Act.[56]

## III.   American Charities' Standing as an Assignee of New River's Claim

Having concluded that American Charities does not have associational standing, the court now turns to whether American Charities has standing as the purported assignee of New River's

---

[51] *See* Dkt. 151, ¶ 5 (stating that because Plaintiffs' "'as-applied' challenges are necessarily specific to the member that is challenging the Act," Plaintiffs must "detail what actions each member has taken in its consulting work and [explain] why those actions are insufficient to bring the member within the legislative jurisdiction of the Act").

[52] *Dinkins*, 5 F.3d at 597.

[53] *Kan. Health Care*, 958 F.2d at 1023.  *Compare Brock*, 477 U.S. at 287 (holding that the association's claims did not require individual participation by its members because "[t]he suit raise[d] a pure question of law"), *with Dinkins*, 5 F.3d at 596 (concluding that the association's takings claims required individual participation because the court "would have to engage in an *ad hoc* factual inquiry for *each* landlord [member] who alleges that he has suffered a taking"), *and Kan. Health Care*, 958 F.2d at 1022–23 (holding that an association of nursing homes did not have standing because the necessary determination of whether certain rates were "reasonable and adequate" would require the court "to examine evidence particular to individual providers").

[54] *United Food & Commercial Workers Union*, 517 U.S. at 555.

[55] *Id.* at 557.

[56] Because the court concludes that individual participation is required, the court does not address the first two requirements of the three-part associational standing test.

§ 1983 claim.

As an initial matter, Defendant maintains that § 1983 claims are not assignable.  Section 1983 provides no direct guidance on whether an individual may transfer her right to sue under the provision.  Where the federal civil rights laws do not provide rules of decision on specific points, courts are instructed to consider the application of "state common law, as modified and changed by the constitution and statutes of the forum state."[57]  Courts are further instructed to apply state law if it is not inconsistent with the goals of the civil rights laws.[58]  Accordingly, the court must look to Utah state law for guidance.

"[Section] 1983 claims are best characterized as personal injury [tort] actions."[59]  Tort claims arising out of personal injury are not assignable under Utah law.[60]  Applying this rule of non-assignability to § 1983 claims is not inconsistent with "the central objective of the . . . civil rights statutes . . . to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief."[61]  While an individual whose federal

---

[57] *Wilson v. Garcia*, 471 U.S. 261, 267 (1985) (citation omitted) (internal quotation marks omitted); *see also* 42 U.S.C. § 1988(a) (stating that "in all cases where [the federal laws] are not adapted to the [goal of protecting all persons in the United States in their civil rights], or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause"); *Pony v. Cnty. of Los Angeles*, 433 F.3d 1138, 1143 (9th Cir. 2006) ("Section 1988 also provides that courts should resolve ambiguities in the federal civil rights laws by looking to the common law, as modified by the laws of the state in which they sit.").

[58] *Wilson*, 471 U.S. at 267; *see also Felder v. Casey*, 487 U.S. 131, 139 (1988) ("Any assessment of the applicability of a state law to federal civil rights litigation . . . must be made in light of the purpose and nature of the federal right.").

[59] *Wilson*, 471 U.S. at 280; *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) (stating that "there can be no doubt that claims brought pursuant to § 1983 sound in tort"); *id.* at 729 (Scalia, J., concurring) ("In *Wilson v. Garcia*, we explicitly identified § 1983 as a personal-injury tort, stating that a violation of § 1983 is an injury to the individual rights of the person, and that Congress unquestionably would have considered the remedies established in the Civil Rights Act of 1871 to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract." (citation omitted) (internal quotation marks omitted)); *Baker v. Bd. of Regents of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993) ("Section 1983 claims are best characterized as personal injury actions.").

[60] *State Farm Mut. Ins. Co. v. Farmers Ins. Exch.*, 450 P.2d 458, 459 (Utah 1969); *see Gilbert v. DHC Dev., LLC*, 2013 WL 4881492, at *11 (D. Utah Sept. 12, 2013).

[61] *Felder*, 487 U.S. at 139 (citation omitted) (internal quotation marks omitted).

constitutional or statutory rights have been abridged may not assign her § 1983 claim to someone else, she may still personally recover damages or secure injunctive relief on her own behalf.

Section 1983 claims are not assignable in Utah, and American Charities does not have standing under the assignment to pursue its PFC members' as-applied challenges to the Act.[62]

## CONCLUSION

For the reasons stated, the court concludes that Rainbow Direct has standing to pursue its as-applied challenges to the Act.  American Charities, however, does not have standing to pursue those claims.  Plaintiffs' Motion for Summary Judgment (Dkt. 365) and Defendant's Motion for Summary Judgment (Dkt. 373) are GRANTED IN PART and DENIED IN PART.

SO ORDERED this 13th day of September, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[62] *See Pony*, 433 F.3d at 1143 (recognizing that a "plaintiff cannot assign her Section 1983 action").