IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC., and RAINBOW DIRECT MARKETING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL O'BANNON, Director of the Utah Division of Consumer Protection, Department of Commerce for the State of Utah,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:08-cv-875<br><br>Judge Robert J. Shelby |

This case is about the scope of Utah's legislative authority. Plaintiff Rainbow Direct Marketing is a New York-based company that consults with charitable organizations about how best to solicit donations. Utah's Charitable Solicitations Act requires companies like Rainbow Direct to register with and obtain a permit from the State before performing consulting services for their clients—a requirement Rainbow Direct contends is unconstitutional. For the reasons below, the court concludes that under existing Tenth Circuit law, the Act is constitutional as applied to Rainbow Direct.

## BACKGROUND

Utah regulates charitable solicitations in the State through the Charitable Solicitations Act, which requires charitable organizations to register with and obtain a permit from the State before soliciting from Utah citizens.[1] Not only must charitable organizations register, but so too

---

[1] Utah Code § 13-22-5 (2005).

must any professional fundraising consultant (PFC) who provides services to a charitable organization.[2] PFCs do not themselves solicit contributions in the State, but instead consult with organizations that do about how best to do so.

Plaintiff Rainbow Direct is one such PFC subject to the Act's registration requirement. Rainbow Direct is a New York limited liability company formed to provide fundraising consulting services to charitable organizations that advocate for gays, lesbians, and bisexuals. In 2007, Rainbow Direct entered into a fundraising consulting contract with Straight Women in Support of Homos, Inc. (SWiSH). SWiSH wished to solicit charitable contributions in Utah, among other states. After SWiSH registered with the Utah Division of Consumer Protection, the Division informed SWiSH that it could not lawfully continue to receive consulting services from Rainbow Direct because Rainbow Direct was not registered with the State.[3]

Rainbow Direct then contacted the Division to confirm that it was required to register, notwithstanding that Rainbow Direct has no clients in Utah, has no offices in Utah, does not solicit business or contributions in Utah, and has no other direct interaction with Utah. The Division informed Rainbow Direct that it nevertheless had to register and pay a fee, and warned that Rainbow Direct would be subject to administrative action if it did not register by the time SWiSH renewed its registration.[4] Rainbow Direct has since refrained from performing any services for SWiSH on account of the registration requirement.

Rainbow Direct subsequently brought this lawsuit, contending the Act is unconstitutional. Both parties have moved for summary judgment on Rainbow Direct's as-applied challenges.[5]

---

[2] *Id.* § 13-22-5(4).
[3] Dkt. 418-1 at 3.
[4] *Id.* at 31.
[5] Dkts. 417, 418. The court previously granted summary judgment to the State on Rainbow Direct's facial challenges. Dkts. 151, 158.

## STANDARDS OF REVIEW

Summary judgment is used to decide pure issues of law and "to isolate and dispose of factually unsupported claims or defenses."[6] The court will grant summary judgment only if there is "no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law."[7] The court will draw any reasonable inferences from the evidence in the light most favorable to the nonmovant.[8]

## ANALYSIS

Rainbow Direct contends the Act violates: (1) the Due Process Clause; (2) the First Amendment; and (3) the Dormant Commerce Clause. The State disagrees, and argues that in any event, Rainbow Direct lacks standing to challenge the Act. The court first addresses the State's standing arguments. Finding that Rainbow Direct has standing to pursue its as-applied challenges, the court then addresses each in turn.

### I. Standing

This is not the State's first time challenging Rainbow Direct's standing to sue. In 2012, Judge Waddoups denied in part the State's motion for summary judgment, concluding that Rainbow Direct had standing to litigate its as-applied challenges to the Act.[9] Last year, the State again challenged Rainbow Direct's standing, and the court declined to reconsider Judge Waddoups's ruling.[10] In its pending Motion for Summary Judgment, the State once again challenges Rainbow Direct's standing, again asking the court to revisit Judge Waddoups's 2012 ruling.

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[7] Fed. R. Civ. P. 56(a).
[8] *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).
[9] Dkts. 151, 158.
[10] Dkt. 399.

When a court decides a rule of law, that decision binds the parties for the rest of the case barring introduction of substantially different evidence, citation to a change in controlling authority, or demonstration that the court's prior decision was clearly erroneous.[11] The State contends new evidence and authority compel reevaluation of Judge Waddoups's ruling, and argues, alternatively, that the ruling was clearly erroneous. As to new evidence, the State recently deposed Rainbow Direct's owner Amy Tripi.[12] It contends that new, substantially different evidence emerged from this deposition—namely, that Tripi was not aware whether Rainbow Direct had fulfilled various administrative requirements of the State of New York, including registering there as a PFC, and that Rainbow Direct had not worked with any charities before SWiSH and has not contracted with any since (the implication, apparently, being that Rainbow Direct and SWiSH never actually planned to conduct a real fundraising campaign). The State made no effort to show that this evidence is substantially different than that in its possession at the time of Judge Waddoups's (and this court's) prior rulings. Rainbow Direct, by contrast, provided evidence that this information is in fact not new and has been known to the State for some time.[13] Moreover, even if the State had demonstrated this evidence was new and different, it has not explained how the evidence is relevant to the issue of standing.

The State next contends that the Tenth Circuit's decision in *Brown v. Buhman* changed the state of Tenth Circuit standing jurisprudence such that Judge Waddoups's decision should be revisited.[14] If *Brown* involved any change in the law, it is not apparent from the panel opinion.

---

[11] *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143 (10th Cir. 2006).
[12] Dkt. 417-1 at 21.
[13] *See* Dkt 424 at 8 ("Defendant knew as early as May 18, 2011 that the RDM-SWISH contract was not registered in New York because it would have appeared in Mark Mahigian's search of the New York Charities Bureau records for Rainbow Direct Marketing, LLC if the contract had been."); Dkt 417-1 at 194.
[14] *See Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016).

4

Nor does the State provide any indication in its briefing how the law has changed, or what impact any change has on this case.

Last, the State argues Judge Waddoups's ruling was clearly erroneous. The court, however, has already concluded that it was not.[15] And nothing in the State's briefing gives the court reason to reconsider that conclusion.

In short, the State has not provided any new, substantially different evidence or controlling authority not before Judge Waddoups in 2012 or this court in 2016, nor has it convinced the court to reconsider its decision that Judge Waddoups's ruling was clearly erroneous. Thus, Judge Waddoups's ruling remains the law of the case, and Rainbow Direct has standing to pursue its as-applied challenges.

**II.     The Due Process Clause**

Turning to the merits, Rainbow Direct first argues the Act, as applied to Rainbow Direct, violates the Due Process Clause of the Fourteenth Amendment because the Act exceeds Utah's legislative authority. It contends that as a New York company operating solely in New York, it does not have sufficient ties with Utah to be subject to the State's legislative authority. The State, on the other hand, argues that Rainbow Direct's work with SWiSH provides the minimal contacts necessary to subject Rainbow Direct to the State's legislative jurisdiction.

The Due Process Clause restricts the State from exercising legislative jurisdiction unless there is "some minimal contact between [the] State and the regulated subject."[16] The minimum contacts analysis in the legislative jurisdiction context mirrors the analysis in the context of

---

[15] Dkt. 399 at 7.
[16] *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1255 (10th Cir. 2000).

5

judicial personal jurisdiction.[17] As with personal jurisdiction, the minimal contacts necessary to assert legislative jurisdiction can be shown through specific jurisdiction (if the subject "purposefully directed" its activities toward Utah) or through general jurisdiction (if the subject is "essentially at home" in the state).[18] And if minimum contacts are shown, the court must also assess whether assertion of jurisdiction is otherwise "reasonable in light of the circumstances surrounding the case."[19] Nobody contends that Rainbow Direct is essentially at home in Utah, so the question is whether it purposefully directs its activities at Utah such that it is subject to specific legislative jurisdiction.

The State concedes that Rainbow Direct's only tie to Utah is its work with SWiSH, a company, as discussed, that solicits charitable contributions in Utah.[20] This work, in relevant part, consists of helping SWiSH choose national mailing lists to use in its fundraising campaigns and coordinating with vendors to do the actual mailing.[21] When choosing among various national mailing lists, Rainbow Direct assesses the lists' past performance with similar charity groups, reviewing metrics such as the percentage of people who responded to prior mailings and the average gift amount of those who responded.[22] One factor Rainbow Direct does not consider, however, is geography. In fact, the lists from which Rainbow Direct chooses do not provide geographic information of potential donors.[23]

---

[17] *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty.*, 221 F.3d 1211, 1216 (11th Cir. 2000); *see also McCluney v. Joseph Schlitz Brewing Co.*, 649 F.2d 578, 581 (8th Cir. 1981) (noting that "essentially the same principle should be applied with reference to both situations").
[18] *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).
[19] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 n.1 (10th Cir. 2004).
[20] Dkt. 423 at vi–vii.
[21] Dkt. 418 at 33–38.
[22] *Id.* at 36–37.
[23] *Id.* at 40.

Nonetheless, the State contends Rainbow Direct's actions constitute purposeful direction toward Utah. Because of the size of each national mailing list—which may contain upwards of 40,000 recipients—it is reasonable to assume, the State argues, that any particular list contains at least one Utah resident.[24] Thus, even if Rainbow Direct does not consciously target residents of Utah, it "knows that the campaign materials it assists in preparing will reach Utah," and it then affirmatively recommends those lists to Rainbow Direct, which the State contends is sufficient to establish legislative jurisdiction.[25]

Rainbow Direct disagrees. It first contends that it does not know whether any of the lists it ultimately recommends to SWiSH contain Utah Residents, so it cannot be said to purposefully target Utah. Rainbow Direct next argues that even assuming Utah residents end up on the lists, because Rainbow Direct does not choose those lists *because* they contain Utah residents, focusing as it does on nongeographic factors, it still does not purposefully direct its activities to Utah. Last, Rainbow Direct contends that even if soliciting using lists containing Utah citizens (albeit chosen for nongeographic reasons) is generally sufficient targeting for purposes of legislative jurisdiction, Rainbow Direct's activities in this case do not qualify because it merely *recommends* lists; SWiSH, it argues, is the party who ultimately directs activities toward Utah by adopting the lists and sending the mailings.

In support of these competing arguments, the parties rely primarily on two authorities, both of which come to opposite conclusions, and neither of which is directly on point. The first is *American Target*, in which the Tenth Circuit upheld legislative jurisdiction for the same law at issue here, albeit as applied to a PFC that contracted "to suggest lists of potential *Utah* donors,"

---

[24] Dkt. 417-1 at 88.
[25] Dkt. 417.

unlike Rainbow Direct, which suggests lists for nationwide mailings.[26] The second is *American Charities*, in which the Eleventh Circuit struck down a law similar in function to that at issue here, but more limited in scope, applying only to charitable solicitations in a particular county, rather than state wide.[27] Both cases rely on the aforementioned standard for assertion of legislative jurisdiction, assessing whether the regulated party "purposefully directed" its activities toward residents of the forum state. With this standard in mind, and in view of *American Target* (which is binding on this court) and *American Charities* (which is not), the court turns to Rainbow Direct's arguments.

As to Rainbow Direct's first argument—that it is not necessarily apparent that the lists it recommends actually contain Utah residents, and therefore, it is not clear that Rainbow Direct's activities actually reach Utah—the court is not persuaded. There can be little doubt that a list of 40,000 United States recipients would include one or more Utah residents. Indeed, the probability that it would not is negligibly small. Rainbow Direct appears (implicitly, at least) to concede as much. It focuses its briefing not on the argument that the lists it selects do not contain Utah residents, but rather on the argument that even if the list contains Utah residents, Rainbow Direct does not choose the list *because* it has Utah residents.

On this second point—that Rainbow Direct cannot be said to direct its activities at Utah because it chooses lists based on nongeographic factors, namely, the likelihood potential recipients will donate—the court is similarly unconvinced. Neither the Supreme Court nor the Tenth Circuit has been entirely clear on what degree and type of targeting of a forum state is

---

[26] *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1255 (10th Cir. 2000) (emphasis added).
[27] *Am. Charities for Reasonable Fundraising Regulation, Inc., v. Pinellas Cty.*, 221 F.3d 1211, 1215–18 (11th Cir. 2000).

required before the state may assert legislative jurisdiction.[28] What is clear is that something more than foreseeability is required; that is, the mere knowledge that an entity's actions will reach a forum state, without more, is not sufficient to establish legislative jurisdiction.[29] The Supreme Court and Tenth Circuit have not, however, examined in any depth just what this "something more" is. In addressing this question, district courts in this circuit have relied on factors from other circuits, including "the [entity's] direction or control over the flow of the product into the forum, the quantity of the [entity's] particular product regularly flowing into the forum, and the distinctive features of the forum that connect it with the product in question."[30]

These factors all focus on the extent to which an entity's actions reach a forum state, and the degree to which the entity (as opposed to a third party) caused them to do so. By contrast, no court, as far as this court is aware, has concluded that legislative jurisdiction turns on an entity's *purpose* for directing activities toward a forum state. There is no indication in Supreme Court or Tenth Circuit authority that the *reason* a party targets a particular state is relevant to the jurisdictional inquiry. In other words, whether an entity directs activities at Utah citizens because they are likely to give, because they like to ski, because they are Mormon, or for the mere reason that they reside between Nevada and Colorado, the entity has nonetheless directed its activities toward citizens of the State. And it can therefore "reasonably anticipate being haled

---

[28] *See, e.g.*, *Eaves v. Pirelli Tire, LLC*, No. 13-1271-SAC, 2014 WL 1883791, at *9–14 (D. Kan. May 12, 2014) (detailing the history and current state of Supreme Court jurisprudence related to purposeful direction under the stream of commerce theory). As the court noted in *Eaves*, the Supreme Court has spoken on the issue of purposeful direction since *American Target* and *American Charities*, though no majority opinion emerged. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 878 (2011). In the wake of *McIntyre*, most courts have construed Justice Breyer's *McIntyre* opinion as the narrowest, and therefore as the holding of the court. *See Johnson v. Chrysler Canada Inc.*, 24 F. Supp. 3d 1118, 1133 (N.D. Ala. 2014) (collecting cases). And most courts have concluded that Justice Breyer's opinion did not change the state of the law. *Id.* Thus, *American Target* and *American Charities* remain good law after *McIntyre*.
[29] *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1297 (10th Cir. 2004); *Eaves*, 2014 WL 1883791, at *9–14.
[30] *Eaves*, 2014 WL 1883791, at *14.

into court" in the State, regardless of the purpose motivating its contacts with the State.[31] Thus, the argument that Rainbow Direct does not choose to target Utah citizens *because* they live in Utah does not insulate it from Utah's legislative jurisdiction.[32]

But Rainbow Direct's third argument—that it does not purposefully direct activities at Utah because SWiSH, not Rainbow Direct, ultimately adopts the recommended lists and conducts the mailings—carries more weight. Indeed, Rainbow Direct does not actually control whether its activities ever reach Utah—SWiSH does. Rainbow Direct recommends lists it thinks will work well, and SWiSH then makes an executive decision about whether to send mailings (or not) to the recipients on the list. In the vernacular of jurisdiction, any mailing that actually reaches Utah will be a result of "unilateral actions taken by someone else."[33] But legislative jurisdiction, according to the Tenth Circuit, "must be based on actions by the [regulated party]," not on "unilateral actions taken by someone else."[34] Rainbow Direct does not meet this standard. It does not solicit in Utah, nor can it by law. In fact, Rainbow Direct could fully perform its obligations under its contract and no mailing may ever reach Utah. Whether one does is up to SWiSH. And because SWiSH makes the ultimate, unilateral decision to contact Utah, Rainbow Direct should not be subject to legislation by the State.

---

[31] *Bell Helicopter*, 385 F.3d at 1296 (requiring that "the defendant's conduct and connections with the forum State [be] such that he should reasonably anticipate being haled into court there").

[32] Not only is the practical effect the same regardless of Rainbow Direct's motive—whether it selects residents because they reside in Utah or for some other factor, the mailings still get there—another consideration convinces the court that this distinction makes no difference: it seems unwise, as a matter of justiciability, to determine that jurisdiction turns on the mindset of a party. Granted, here, it seems to be undisputed that Rainbow Direct does not intend to take geography into account when choosing which people to target. But in future cases this may not be so apparent. Lest jurisdictional analyses turn into complicated evidentiary questions related to a party's state of mind, it seems prudent to keep a party's intentions out of the analysis and focus on the objective question of whether the entity's activities reached the target forum.

[33] *Bell Helicopter*, 385 F.3d at 1296.

[34] *Id.*

The court, however, nonetheless concludes it is bound to find legislative jurisdiction in this case. Notwithstanding related Tenth Circuit law discussing unilateral actions of third parties, the Tenth Circuit in *American Target* concluded—with no analysis on this point—that a PFC like Rainbow Direct could establish the requisite minimum contacts with a state merely through its advising activities, even if a third party actually controls the ultimate decisions related to the mailings. For the reasons stated above, the court believes that part of the decision to be in tension with Supreme Court and Tenth Circuit authority regarding unilateral activity. It is also in tension with *American Charities*, where the Eleventh Circuit engaged in reasoned analysis on facts similar to those in this case, acknowledging that PFCs "themselves do not send mailings to the public . . . do not solicit, do not handle the funds, and are not paid on a percentage of the contributions basis."[35] On this basis, in part, the Eleventh Circuit concluded American Charities was not subject to the County's legislative jurisdiction.[36] This court believes Tenth Circuit and Supreme Court authority—namely, *Bell Helicopter* and *World Wide Volkswagen*, from which the "unilateral action" standard derives—dictates that same result here.[37]

Nonetheless, *American Target* is directly on point on this issue, so, as discussed above, the court is bound by its conclusion that the actions of consulting and recommending mailing lists suffice to establish purposeful direction of activities toward Utah. And Rainbow Direct has not otherwise demonstrated "the presence of some other considerations [that] would render

---

[35] *Am. Charities for Reasonable Fundraising Regulation, Inc., v. Pinellas Cty.*, 221 F.3d 1211, 1215–18 (11th Cir. 2000).
[36] The Eleventh Circuit also relied on its understanding that the PFC recommended *national* lists, not lists directed at the county in question. It is not clear from the court's analysis whether its decision turned on the fact that the PFC did not itself solicit, that it recommended national (rather than local) lists, or some combination of both.
[37] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980); *Bell Helicopter*, 385 F.3d at 1296. These cases were not the first to use the phrase "unilateral action" in the jurisdiction context, but they are widely cited on that point.

jurisdiction unreasonable."[38] Under existing Tenth Circuit law, legislative jurisdiction is therefore proper.

### III. First Amendment

Rainbow Direct next argues the Act violates its First Amendment rights. Initially, Rainbow Direct argued the Act was facially unconstitutional as an impermissible abridgment of speech and as an unconstitutional prior restraint. Judge Waddoups in 2012 ruled that Rainbow Direct's facial challenges on both grounds were foreclosed by *American Target*.[39] Given that ruling, Rainbow Direct agrees the only issue before the court today is its as-applied challenge to the Act as an impermissible abridgment of speech (it does not reassert a prior restraint argument).[40] Thus, the court addresses Rainbow Direct's as-applied challenge, and, specifically, whether that challenge is similarly foreclosed by *American Target*.

Charitable solicitations undoubtedly qualify as protected First Amendment speech.[41] Thus, the Act's restrictions on this speech are subject either to intermediate scrutiny (if the Act is content neutral) or strict scrutiny (if it is content based).[42] The Tenth Circuit has already concluded the Act is content neutral and subject to intermediate scrutiny.[43] Thus, Rainbow

---

[38] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008).
[39] Dkt. 158 at 29.
[40] *See* Dkt. 424 at 26 ("Defendant's arguments regarding prior restraint are unnecessary because Judge Waddoups ruled against Plaintiff's facial challenges to the Act in in 2012.").
[41] *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000). The speech in question is that of SWiSH, not Rainbow Direct, but in the First Amendment context, "a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980). It is not entirely clear that this doctrine applies in the context of an as-applied challenge, but because the State argued the issue only cursorily, and because Rainbow Direct's First Amendment argument fails on other grounds, the court need not address the issue.
[42] *Am. Target*, 199 F.3d at 1247.
[43] *Id.*

Direct must show the Act serves a substantial government interest and is narrowly drawn to serve that interest without substantially interfering with First Amendment freedoms.[44]

The Tenth Circuit has similarly already concluded that protecting the public against fraud in charitable solicitations is a substantial government interest, and Rainbow Direct does not dispute that element.[45] It does, however, contest that the Act actually serves that interest and that it is narrowly tailored to do so.[46] The first argument, however—that the Act does not actually serve a substantial government interest—is foreclosed by *American Target*'s conclusion that "[t]he Act's general declarations and specific prohibitions clearly target fraud" and that "[t]he Act therefore serves a substantial government interest."[47] In other words, Rainbow Direct's argument that in reality the Act does nothing to prevent fraud is best directed toward the Tenth Circuit as a request to reconsider its precedent, by which this court is bound.

As to narrow tailoring, the Tenth Circuit has concluded that "the registration and disclosure provisions of the Utah Act are narrowly tailored to serve the state's substantial interest in fighting fraud."[48] This conclusion came in the context of a facial challenge, and Rainbow Direct's argument here appears to be that notwithstanding this facial ruling, Rainbow Direct's individual situation is sufficiently unique that the Act is not narrowly tailored as applied to Rainbow Direct. The question, then, is whether this case falls within "the core fact situation intended to be covered" by the statute and whether it involves "the same type of fact situation that was envisioned by [the Tenth Circuit] when the facial challenge was denied" in *American Target*.[49] In addressing this question, Rainbow Direct focuses on two burdens on its speech it

---

[44] *Id.*
[45] *Id.*; Dkt. 418 at 39.
[46] Dkt. 418 at 39.
[47] *Am. Target*, 199 F.3d at 1247.
[48] *Id.* at 1248.
[49] *McGuire v. Reilly*, 386 F.3d 45, 61 (1st Cir. 2004).

13

contends were not considered by the Tenth Circuit in *American Target*: its expert's opinion that the total cost of registering in every state exceeds $13,000 annually, and its belief that it must contact the Division of Consumer Protection daily to confirm compliance of each of its charity clients, lest it subject itself to administrative action for providing services to a client whose registration has lapsed.

Neither factor compels the conclusion that the Act burdens Rainbow Direct in a way not contemplated by the Tenth Circuit when it concluded the Act was facially constitutional. As to cost, it is not clear why the cost of complying with other states' registration requirements can be considered a burden imposed by Utah's Act. The Tenth Circuit already concluded the then-$250 fee (now-$100 fee) imposed by Utah was reasonable and not unduly burdensome. What Rainbow Direct pays to other states is irrelevant.

With regard to Rainbow Direct's belief that it has to check daily the status of all its clients, that is not a requirement of the Act. Rainbow Direct concedes as much; it does not argue the Act explicitly requires daily checkins, but instead contends it is "the only conceivable compliance strategy."[50] The court disagrees. Rainbow Direct could, for example, contract with its clients to require that they provide notice when they fall out of compliance with the Act or indemnify Rainbow Direct if they fail to do so. Because the Act imposes neither the burden of paying fees in states other than Utah nor calling to check compliance daily, Rainbow Direct's First Amendment argument fails.

## IV. Dormant Commerce Clause

Rainbow Direct's final challenge arises under the Dormant Commerce Clause. A corollary of the Commerce Clause, the Dormant Commerce Clause restricts a state from enacting

---

[50] Dkt. 418 at 42.

legislation that burdens interstate commerce if it has insufficient offsetting local benefits.[51] Dormant Commerce Clause challenges come in three flavors: the typical case, which involves a balancing of the effect on interstate commerce with the offsetting local benefits (the *Pike* line), and two varieties in which the balance of these interests is so skewed toward unconstitutionality that the regulation in question is deemed per se unconstitutional (the *Philadelphia* and *Healy-Baldwin* lines).[52]

The Tenth Circuit has already addressed the constitutionality of the Act under the *Pike* and *Philadelphia* lines, determining it passes muster under both.[53] Recognizing this, Rainbow Direct concedes its only pending challenge is under the *Healy-Baldwin* line.[54] Under this line of cases, any "price control [or] price affirmation laws that control 'extraterritorial' conduct" (meaning conduct outside the state's borders) are "deemed almost *per se* invalid."[55]

But the *Healy-Baldwin* line applies only to "price control or price affirmation statues that link in-state prices with those charged elsewhere and discriminates against out-of-staters."[56] The Act challenged here has none of these characteristics. And for that reason, Rainbow Direct's Dormant Commerce Clause challenge under the *Healy-Baldwin* line of cases fails.

Rainbow Direct doesn't directly argue that any of these characteristics are present, but instead cites broad language from *Healy* suggesting that a court should strike as per se unconstitutional any law that regulates commerce occurring wholly outside a state's borders (rather than cabining the doctrine solely to situations involving price control regulations).[57] The

---

[51] *See Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1171 (10th Cir. 2015).
[52] *Id.* at 1171–72.
[53] *Am. Target*, 199 F.3d at 1254.
[54] Dkt. 424 at 27 ("Plaintiff's Commerce Clause challenge is premised upon the *Healy* jurisprudence . . . .").
[55] *Epel*, 793 F.3d at 1172.
[56] *Id.* at 1174.
[57] Dkt. 418 at 34–37.

Tenth Circuit, however, has already addressed and dismissed this very argument, concluding that while some language in *Healy* could in theory be read quite broadly, in practice, "the Court's holdings have not gone nearly so far and have turned instead on the presence of [the] three [aforementioned] factors" (i.e. that the statute is (1) a price control statute that (2) links in-state prices with those charged elsewhere and (3) has the effect of raising costs for out-of-state consumers).[58] The court made clear that notwithstanding *Healy*'s broad dicta suggesting otherwise, "*Healy* and *Baldwin* are not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices."[59] Because the Act in question does neither, Rainbow Direct's Dormant Commerce Clause argument fails.

## CONCLUSION

In sum, the Act does not violate Rainbow Direct's Due Process, First Amendment or Dormant Commerce Clause rights. The State's Motion for Summary Judgment is GRANTED.[60] Rainbow Direct's Motion for Summary Judgment is DENIED.[61]

The Clerk of Court is directed to close the case.

SO ORDERED this 10th day of October, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[58] *Epel*, 793 F.3d at 1174.
[59] *Id.* at 1175.
[60] Dkt. 417.
[61] Dkt. 418.